UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF THE FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF15 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FF15,<br>       Plaintiff,<br><br>    v.<br><br>DONALD A. DOWNING AND JUDITH R. BOONE,<br>       Defendants. | CIVIL ACTION<br>NO. 13-cv-11103-TSH |

**REPORT AND RECOMMENDATION REGARDING
DEFENDANT DONALD A. DOWNING'S
<u>MOTION TO REMAND AND MOTION FOR ATTORNEY'S FEES</u>**

**November 5, 2013**

Hennessy, M.J.

      Pursuant to 28 U.S.C. § 636(b)(1)(B), and an order referring the motion to remand and motion for attorney's fees to me,[1] I make the following report and recommendation.

**BACKGROUND**

      This lawsuit concerns an eviction. Plaintiff commenced a summary process proceeding in Housing Court to recover possession of a residence from an alleged holdover tenant, and when the tenant counterclaimed, plaintiff removed the case to this Court. Plaintiff did so despite 150 years of statutory authority reserving the right to remove cases to a defendant only, and despite

---

[1] <u>See</u> Docket #11, #13 and #29.

1

the complete absence of federal jurisdiction over its summary process claim.[2]  Defendant Downing has moved to remand this case to the Housing Court, and moved for his attorney's fees incurred with the removal.  Following briefing and oral argument, for the reasons stated below, I recommend that both of Downing's motions be allowed.

### FACTS

On or about November 9, 2012, Wells Fargo[3] initiated this case in the Housing Court by filing a summary process action against its alleged holdover mortgagor, Donald Downing of 85 Arlington Street, Fitchburg, Massachusetts.[4]  See Docket #8, p. 7.  As damages, Wells Fargo sought "use and occupancy from the date of foreclosure in an amount to be determined at trial."  Id.  On or about November 20, 2012, Downing, *pro se*, filed an "Answer Form" which is a preprinted form published in a booklet of legal tactics for tenants asserting rights.  See Docket #8, pp. 38-46, 76.  On the Answer Form, Downing checked various boxes and handwrote other notes that appeared to raise defenses and counterclaims, but in a confusing and uncertain manner.  Soon after, he secured counsel through Merrimack Valley Legal Services.  Id., p. 47.  Thereafter,

---

[2]  As is discussed below, Wells Fargo asserted both diversity and federal question jurisdiction as the basis for removal.  See Docket #1, ¶ 6.  A quick glance at the one-page Summary Process Summons and Complaint shows this assertion is untenable.  See Docket #8, p.7.

[3]  Wells Fargo is formally known as Wells Fargo Bank, National Association, as trustee for the Holders of the First Franklin Mortgage Loan Trust 2006-FF15 Mortgage Pass-Through Certificates, Series 2006-FF15, with a principal place of business of 9062 Old Annapolis Road, Columbia, Maryland.  See Docket #1, ¶ 1.

[4]  According to its Summary Process Summons and Complaint, Wells Fargo foreclosed in September, 2012.  See Docket #8, pp.7, 91.  Downing has been a hold over tenant since that time.  Wells Fargo also named Downing's spouse, Judith R. Boone, as a defendant in the eviction, but according to Downing's Answer and Counterclaim, Boone is separated from Downing and no longer occupies the premises at issue.  Id. at p.7.  There is no record of Boone being represented or otherwise participating in the state court proceedings, and she is neither represented by counsel nor has filed any papers in federal court (with the exception of a July 2, 2013 notice of consent to proceed before a magistrate judge, see Docket #25).

Wells Fargo moved for a more definite statement regarding the possible defenses and counterclaims. Id., pp. 76-78. With the assistance of counsel, Downing amended his pleading and asserted the following counterclaims in the summary process action: (1) breach of contract (failure to follow mortgage) and promissory estoppel (HAMP violations); (2) breach of covenant of good faith and fair dealing (by violating mortgage & HAMP); (3) violation of Mass. Gen. Laws ch. 93A; and (4) violation of Mass. Gen. Laws ch. 151B, discrimination on the basis of disability.[5] See Docket #8, pp. 87-99. On April 5, 2013, the Housing Court allowed the Amended Answer and Counterclaims. On May 3, 2013 Wells Fargo (plaintiff and defendant-in-counterclaim) removed the case to this Court, claiming a right to removal based on Downing's counterclaims.[6] Id., p. 100.

    Wells Fargo acknowledges that generally only a defendant has the right to remove a case from state to federal court (28 U.S.C. § 1441(a)); however, it urges this Court to adopt an

---

[5] As is discussed below, HAMP is an acronym for the Home Affordable Modification Program, administered by Fannie Mae. HAMP aims to provide relief to borrowers who have defaulted on their mortgage payments, or who are likely to default, by reducing mortgage payments to sustainable levels. A servicer participating in HAMP may not proceed with a foreclosure sale on a property in default until the borrower has been evaluated for HAMP eligibility. See Markle v. HSBC Mortg. Corp., 844 F. Supp. 2d 172 (D. Mass. 2011) (discussing HAMP generally).

[6] Downing alleges the Notice of Removal was untimely based on his claim that the 30 day removal period began to run when his original answer, containing checked boxes and handwritten counterclaims, was filed in November 2012, or in the alternative on March 25, 2013, when he served his amended answer and counterclaim. However, using the November 2012 date would be unfair as the record reflects uncertainty by Wells Fargo regarding what Downing alleged (e.g., Wells Fargo's motion for a more definite statement, see Docket #8, pp. 76-78). Using the March 2013 date would also be unfair as the amended answer and counterclaim were not automatically granted, but instead required a hearing by the Housing Court. See Docket #15-2, p. 1. The Housing Court heard and allowed the motion on April 5, 2013, thus making this the day that Downing's defenses and counterclaims certainly and conclusively were known to Wells Fargo. See Document #8, pp. 87-99. The 30 day period for removal runs from the date the court grants the motion amending the pleading. Sullivan v. Conway, 157 F.3d 1092, 1095 (7th Cir. 1998). Accordingly, the 30 day period began to run on April 5, 2013, which makes the May 3, 2013 filing of Wells Fargo's Notice of Removal, timely.

exception: federal jurisdiction should be available by way of removal to a plaintiff/defendant-in-counterclaim if counterclaims drastically change the nature of the lawsuit from state law matters to those implicating federal jurisdiction.  Specifically, Wells Fargo argues that Downing's counterclaims supply federal jurisdiction because they (1) involve federal questions (HAMP violations), and (2) satisfy the federal jurisdictional requirements.  In other words, Wells Fargo posits that the counterclaims have dramatically altered the substance of the lawsuit, and as a defendant-in-counterclaim for "federal" claims, Wells Fargo is, in reality, a "defendant" under the removal statute.

In the alternative, Wells Fargo asks this Court to restyle, or re-align, the position of the parties so that Wells Fargo becomes the true defendant (based on its argument that the counterclaims have fundamentally altered the overriding nature of the case).[7]

None of Wells Fargo's arguments are persuasive.

## DISCUSSION

1. <u>Removal is the exclusive right of a Defendant</u>

As the removing party, Wells Fargo bears the burden of showing a basis for the exercise of federal jurisdiction.  See <u>BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.</u>, 132 F.3d 824, 830-31 (1st. Cir. 1997) (citation omitted).   Federal law governs removal of cases from state to federal court.  See 28 U.S.C. §§ 1441-1449.  With regard to "who" is eligible to remove a case, whether jurisdiction is based on federal question or diversity, it is clear that only defendants are eligible:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United

---

[7] Wells Fargo also asserted in its Opposition to the motion to remand, and then withdrew at oral argument, a claim that the "complete preemption doctrine" applies and converts its summary process claim into a federal HAMP claim necessitating federal subject matter jurisdiction.

> States have original jurisdiction, may be removed <u>by the defendant or the defendants</u>, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (emphasis added). In the seminal decision addressing the scope of Section 1441(a), <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100 (1941), the Court narrowly construed the phrase "by the defendant or the defendants." <u>Id.</u> at 104-05. There, the defendant had been sued in state court on a debt and had counterclaimed for an unrelated breach of contract. <u>Id.</u> at 103. The plaintiff then removed the case to federal court. <u>Id.</u> The question before the Court was whether plaintiff's removal was proper. <u>Id.</u> The plaintiff argued as a result of the counterclaim, it had become, in reality, a defendant. <u>Id.</u> The Court disagreed, relying on three related considerations relevant to the instant case. First was the recognition that a plaintiff chooses the forum, and having "submitted himself to the jurisdiction of the state court, was not entitled to avail himself of a right of removal conferred only on a defendant who has not submitted himself to the jurisdiction." <u>Id.</u> at 106 (citing <u>West v. Aurora City</u>, 73 U.S. 139 (1867)). Second was the history of the removal statute. Other than a brief twelve-year period from 1875 to 1887 when Congress gave "either party" the right of removal, Congress has limited the removal right to defendants.[8] <u>Id.</u> Third were principles of federalism, which the Court said called for strict construction of the removal statute: "Due regard for the rightful independence of

---

[8] Section 12 of the Judiciary Act of 1789 authorized removal from state to federal court only by "the defendant or defendants." <u>Shamrock Oil</u> at 106. For the limited period of 1875 to 1887, Congress liberalized the removal statute to give "either party" the privilege of removal. <u>Id.</u> In 1887, Congress amended the statute to revert to the substance of the Judiciary Act and authorized removal by the defendant or defendants only. <u>Id.</u> The <u>Shamrock Oil</u> Court found "these alterations in the statute … of controlling significance as indicating the Congressional purpose to narrow the federal jurisdiction on removal by reviving in substance the provisions of [Section] 12 of the Judiciary Act of 1789." <u>Id.</u>

state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Id. at 109.

Shamrock Oil has been uniformly followed. Wright & Miller note: "The federal courts have strictly interpreted these [removal] limitations, often speaking of the right to remove as being limited to 'true' defendants. Thus, plaintiffs cannot remove, even when they are in the position of defendants with regard to a counterclaim asserted against them." See, 14C Wright, Miller, Cooper & Steinman, Federal Practice & Procedure § 3730 (4th ed. 2009).

In facts analogous to those at bar, this district similarly found that Section 1441(a) grants a right of removal only to a "true" defendant. See Rodriguez v. Fed. Nat. Mortg. Ass'n, 268 F. Supp. 2d 87 (D. Mass. 2003). In Rodriguez, the Federal National Mortgage Association ("FNMA") filed a summary process complaint against a holdover mortgagor and his tenant, Gonzalez, in state housing court. Gonzalez counterclaimed. Id. at 88. As the case progressed, both parties stipulated that FNMA would dismiss the claim asserted against Gonzalez without prejudice and that the counterclaims asserted against FNMA would be transferred to another court's civil docket. Id. The stipulation also provided that the new civil docket filing would identify Gonzalez as the plaintiff and FNMA as the defendant. Once filed, FNMA removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. Id. at 88-89. Gonzalez argued that removal was improper, and the district court agreed:

> The fact that the parties here may have recharacterized their positions vis-a-vis one another when FNMA was willing to dismiss its claim does not change the basic character of the lawsuit initiated by FNMA in state court to evict Gonzalez or, for that matter, the counterclaims asserted by Gonzalez in his defense. . . .FNMA, by its own admission, had the choice to commence this action in federal or state court. Having opted for a state forum, it cannot be given a second opportunity to exercise that choice when it dismissed its action. . . . Since there was only one lawsuit in the state court, FNMA remained a defendant-in-counterclaim and its argument

6

>in opposition to Gonzalez's motion to remand necessarily falls on its own weight.

Id. at 90-91 (internal citations omitted).

Applying these authorities, it is clear Wells Fargo improvidently removed this case. Wells Fargo is the plaintiff, and Downing's counterclaims do not alter Wells Fargo's status as plaintiff, any more than the counterclaims did in Shamrock Oil or Rodriguez. It initiated this suit to recover property. Consequently, it is in the same position as the plaintiffs in Shamrock Oil and Rodriguez. Remand should be granted because Wells Fargo is not a "true" defendant.

    2.    Well's Fargo's Fairness Argument is Contrary to Law and Without Merit

Despite the unambiguous language of the removal statute and the Court's gloss on it some 75 years ago in Shamrock Oil, Wells Fargo is undeterred in its pursuit of a federal forum. It claims that this case is unique and outside the limitations of the removal statute and Shamrock Oil. This claim is urged without any basis in law, but rather on the strength of the contention of Wells Fargo's counsel that "it does not seem that Congress intended" to deny Wells Fargo a federal forum in the circumstances of this case.

Wells Fargo's argument goes as follows: it is not the master of its claim because it had no choice but to bring its summary process complaint in state court. It correctly notes that a summary process action to recover possession of real property is within the jurisdiction of Massachusetts Trial Courts. See Mass. Gen. Laws ch. 185C, § 3. Summary process is a mechanism created by the Massachusetts legislature permitting "'expeditious' … recovery of real property interests." See Harvard Real Estate-Alston v. Kmart Corporation, 407 F. Supp. 2d 317, 320 (D. Mass. 2005). It "is a purely statutory procedure and can be maintained only in the instances specifically provided for in the statute." Id. quoting Cummings v. Wajdo, 325 Mass. 242, 243 (1950). As such, Wells Fargo argues it was compelled to bring its action for recovery

7

in state court and unfairly denied the choice of forum on which, the Court in Shamrock Oil relied (at least in part) for its strict interpretation of the removal statute. Indeed, Wells Fargo argues that Shamrock Oil and Rodriguez are distinguishable because the plaintiffs in those cases had a choice of bringing suit in state or federal court and, in this summary process action, Wells Fargo had no such choice. In Wells Fargo's view, it would be "wildly unjust" to deny it a choice of forums. See Docket #15, p. 6. Wells Fargo asserts that Downing's counterclaims lay a basis for federal jurisdiction and supply the opportunity for Wells Fargo to exercise the choice of forum that summary process denied it.

As an initial matter, there is no unfairness in applying the restrictions on removal to Wells Fargo or to any similarly situated plaintiff. The removal statute (28 U.S.C. § 1441), not only limits the privilege of removal to defendants, as discussed above, but also to certain claims. Removal is restricted to civil actions "brought in a State court of which the district courts of the United States have original jurisdiction." See 28 U.S.C. § 1441(a) (emphasis added). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendants." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). The presence or absence of federal subject matter jurisdiction is governed by the well-pleaded complaint rule which provides that federal jurisdiction is determined by examining the face of plaintiff's properly pleaded complaint. Id. This rule "prohibits the exercise of federal jurisdiction if no federal claim appears within the four corners of the complaint." BIW Deceived, 132 F.3d at 831 (citations omitted). "[A] case may not be removed on the basis of a federal defense." Caterpillar, 482 U.S. at 393 (citation omitted; emphasis in original); see also Phillips Petroleum Co. v. Texaco Inc., 415 U.S. 125, 127-128 (1974) ("The federal question must be disclosed upon the face of the complaint, unaided by the answer.").

It is pellucid that whole categories of cases – for instance, cases lacking complete diversity of parties or the requisite amount in controversy – must be brought in state court because federal jurisdiction is not implicated. In such cases, plaintiff and defendant are on equal footing: a defendant cannot remove from state to federal court a case lacking federal jurisdiction any more than a plaintiff could commence such a case in federal court in the first place. See Caterpillar, 482 U.S at 392. Section 1441(a) implicitly recognizes this, limiting the removal privilege to those cases over which the federal courts have original jurisdiction. Indeed, as the Shamrock Oil Court noted, there is no basis "for saying that Congress by omitting from the present statute all reference to 'plaintiffs,' intended to give the right of removal to some plaintiffs and not to others." Shamrock Oil, 313 U.S. at 108.

By the same token, Wells Fargo's attempt to distinguish Shamrock Oil and Rodriguez because the plaintiffs in those cases had a choice of forum and Wells Fargo did not, is unpersuasive. Shamrock Oil did not use the term "choice of forums;" rather, it focused on the consequence that follows any decision to bring a lawsuit in a forum: i.e., by bringing suit, a plaintiff has "submitted himself to the jurisdiction of the … court." Shamrock Oil, 313 U.S. at 106. Similarly, the court noted in Rodriguez that the plaintiff "had the choice to commence [its] action in federal or state court," and having "opted for a state forum" did not get a second opportunity to select a forum. Rodriguez, 268 F. Supp. 2d at 91. However, neither Shamrock Oil nor Rodriguez stand for the propositions that being the "master of one's complaint" means having a choice of forums, or that having a choice of forum is a prerequisite to the operation of the limitations on removal. To be sure, Wells Fargo offers absolutely no law to support a departure from the letter of Section 1441 and longstanding Supreme Court precedent.

Even assuming there is any merit to Wells Fargo's fairness argument (and in my view, there is not), the remedy it proposes is squarely contrary to the law discussed above.[9] Pure and simple, the dispositive pleading for determining removal is the complaint, not the responsive pleading. Here, Wells Fargo's complaint fails to implicate federal jurisdiction in any way. It is a one-page, fill-in-the-blanks, Commonwealth of Massachusetts form entitled "Summary Process (Eviction) Summons and Complaint." See Docket #8, p.7. It alleges that Downing is a holdover tenant unlawfully occupying a residence in Fitchburg, Massachusetts, following termination of a rental agreement. Id. It seeks damages corresponding to "use and occupancy from the date of foreclosure." Id. There are no allegations which support federal question or diversity jurisdiction. Hence, under the well-pleaded complaint rule, Wells Fargo's complaint fails to supply a basis for removal.

---

[9] It is not at all clear that Downing's counterclaims lay a basis for federal jurisdiction. Wells Fargo argues that Downing's counterclaims are "based on HAMP" that require adjudication in federal court because HAMP is a federal statute that should be addressed solely in federal courts to achieve uniform interpretation nationally. The weakness to Wells Fargo's argument is that none of Downing's counterclaims are HAMP claims; instead, Downing asserts state law counterclaims such as promissory estoppel, breach of the covenant of good faith and fair dealing, violation of chapter 93A, and chapter 151B. See Docket #8, pp. 87-99. Moreover, and more devastating to Wells Fargo's argument, is the fact that mortgagors like Downing cannot assert HAMP claims because HAMP does not create a private right of action; instead HAMP creates obligations between lenders and the government. See, e.g., In re Bank of America Home Affordable Modification Program (HAMP) Contract Litig., No. 10-md-2193-RWZ, 2011 WL 2637222 at *3 (D. Mass. July 6, 2011) (no private cause of action under HAMP for homeowners); Blackwood v. Wells Fargo Bank, N.A., 10-cv-10483-JGD, 2011 WL 1561024 (D. Mass. Apr. 22, 2011) (dismissing homeowner's breach of HAMP contract claim); Alpino, 2011 WL 1564114 *4 (dismissing homeowner's HAMP claim because they are not intended beneficiaries of the agreement governing HAMP); Laguer v. OneWest Bank, FSB, No. MICV2010-3353, Salinger, J., 31 Mass. L. Rptr. 14 *6-7 (2013) (no private cause of action under HAMP, but a bank's unfair or deceptive violation of HAMP directives may violate chapter 93A); see also, Alexander v. Sandoval, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.").

If more needed to be said, any doubts about whether removal is proper are resolved against a defendant and in favor of remand.  Shamrock Oil, 313 U.S. at 108–09; American Bldgs. Co. v. Varicon, Inc., 616 F. Supp. 641, 643 (D. Mass. 1985).  The federal courts are courts of limited jurisdiction.  See, Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986) (because removal raises significant federalism concerns, federal courts must strictly construe jurisdiction against removal); Shamrock Oil, 313 U.S. at 108 ("Due regard for the rightful independence of state governments … requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined.").  An exercise of jurisdiction here would offend principles of federalism.

Wells Fargo's attempt to create an exception to controlling and longstanding law is profoundly flawed and wholly unsupported.  The motion to remand should be allowed.

    3.       The Proposal To Re-Align the Parties

Wells Fargo makes one last pitch to remain in federal court.[10]  It argues the Court should re-align the parties so that Wells Fargo becomes the defendant (with the right to remove) in recognition of "the overriding federal claims which now form the heart of this case."  See Docket #15, p. 8.  When pressed at oral argument, counsel for Wells Fargo acknowledged there were no cases to support its proposal, but that the "unique circumstances" here warranted a deviation from years of settled precedent regarding federal jurisdiction.

As a threshold matter, I reject Wells Fargo's contention that "overriding federal claims … now form the heart of this case."  Wells Fargo still seeks to recover real property; the dispute is still about evicting Downing whom Wells Fargo alleges unlawfully occupies a residence Wells

---

[10]  Wells Fargo had also argued for application of complete preemption in its papers, but at oral argument, Wells Fargo withdrew the argument, agreeing with me that the doctrine does not apply here.

Fargo owns.  See Docket #8, pp. 7, 91.  Moreover, Downing's counterclaims have not altered the non-federal character of Wells Fargo's suit.  Downing alleges state court counterclaims that are based in part on allegations that Wells Fargo failed to follow the protocol set out in HAMP.  These counterclaims go to Wells Fargo's ability to evict Downing.  Thus, the character of the dispute has remained unchanged.

Even if the character of the case had changed, the case law Wells Fargo cites fails to support restyling or re-alignment here.  For example, Hrivnak v. NCO Portfolio Mgt., Inc., 723 F. Supp. 2d 1020, 1028 (D. Ohio 2010), is distinguishable.  Hrivnak was originally a defendant in a state court suit.  There, his responsive pleading alleged federal claims and added parties as counterclaim defendants.  After motion practice and discovery, the original state court plaintiff dismissed its complaint against Hrivnak.  As a result, the counterclaims were all that remained in state court.  The presiding judge, on a motion of a counterclaim defendant, then ordered Hrivnak to file a complaint asserting his counterclaims as affirmative claims.  Once the parties were re-aligned pursuant to the judge's order, a defendant (formerly a counterclaim defendant) removed the case to federal court.  Hrivnak is plainly distinguishable because re-alignment was the result of an order of the state court before removal.  Indeed, this fact was "material because the state order both removes any concerns regarding collusion between the parties … and constitutes a formal pre-removal determination  regarding the character of the action and the parties respective roles."  Id. at 1027.

Wells Fargo also quotes from City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63 (1941), a case which is factually distinguishable because it deals with diversity jurisdiction.  But beyond that, the case undermines Wells Fargo's position here.  The Court stated:

> Diversity jurisdiction cannot be conferred upon the federal courts by the parties'
> own determination of who are plaintiffs and who defendants.  It is our duty, as it

>is that of the lower federal courts, to look beyond the pleadings and arrange the parties according to their sides in the dispute. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary collision of interests exists, is therefore not to be determined by the mechanical rules. It must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute.

Id. at 70. However, in quoting this decision, Wells Fargo omitted the first and important sentence (see Docket #15, p. 9), which is highly relevant as it addresses the merits of having the parties themselves determine who is a plaintiff and defendant. In any case, neither this decision nor the abbreviated manner in which Wells Fargo quoted it, aids Wells Fargo's pitch.

Lastly, Wells Fargo relies to no avail on Hingst v. Providian Nat'l Bank, 124 F. Supp. 2d 449 (S.D. Tx. 2000), a case which concerns whether actions in a prior lawsuit constitute a waiver of the right to remove. In Hingst, the plaintiff bank sued to collect a debt and then later non-suited the action. When the defendant in the original non-suited action brought an Unfair Debt Collection Practices Act claim, the district court allowed the bank, now the defendant, to remove because it was a "wholly new lawsuit." Id., at 452. Substantively, the case deals with whether the bank's prior non-suit constituted a waiver of the right to remove. Id. That is not the case here.

Moreover, courts in this district have rejected parties' attempts to re-align themselves. See, e.g., Rodriguez, 268 F. Supp. 2d at 90 (expressly rejecting the parties' attempt at realignment, despite their agreement and re-characterization of their counterclaims as claims); Reiter Oldsmobile, Inc. v. General Motors Corp., 477 F. Supp. 125 (D. Mass. 1979) (state court clerk's restyling of remainder of case, after final disposition of claims of the original plaintiffs, did not make one original plaintiff a "defendant" for purposes of federal removal statute, and thus original plaintiff was not entitled to remove case, which was "derived from a counterclaim" in original action, to federal court).

Here, Wells Fargo's proposal is merely a gimmick to end-run both the language of the removal statute and the real and unchanged character of its complaint. The "overriding nature of the case" is still about Wells Fargo trying to recover possession of real property. Downing's counterclaims do not change the character of this suit. Accordingly, I decline to re-align or restyle this suit to cast Wells Fargo as a defendant. [11]

    4.    <u>Attorney's Fees</u>

Congress has given district courts the authority to award costs and attorney's fees incurred as a result of improper removal. 28 U.S.C. § 1447(c). Downing has moved for award of his attorney's fees. In support, his attorney, Jennifer Kurrus, submitted an affidavit of her fees. <u>See</u> Docket #13. Wells Fargo claims fees are unwarranted because it has "an objectively reasonable basis for seeking removal." <u>See</u> Docket #15, p. 11.

The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of removal." 28 U.S.C. § 1447(c). Interpreting this provision, the Supreme Court unanimously noted:

> The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the [non-removing party]. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

---

[11] Indeed, Wells Fargo proposes that the court could deny the motion to remand and retain only the federal claims. Since every claim in this lawsuit, whether alleged by Wells Fargo or interposed by defendant, is a state claim, that remedy would leave no remaining claims.

14

Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005). With this background in mind, the Court went on to clarify, "[i]f the removing party had an objectively reasonable basis for seeking removal, it is generally inappropriate for a court to award costs under [the statute]." Id., at 141.

Seizing on this concept of "objectively reasonable," Wells Fargo objects to Downing's motion for attorney's fees, arguing it had "set forth several objectively reasonable bases for its removal of this matter." See Docket #15, p. 11. As is discussed above, I find to the contrary: no objectively reasonable bases supported Wells Fargo's removal to this Court. Moreover, the justification for an award of attorney's fees is appropriate where Wells Fargo has delayed the summary process procedure and wasted judicial resources. See, Harvard Real Estate-Allston, Inc. 407 F. Supp. 2d at 322 (discussing the appropriateness of attorney's fees for a failed attempt to remove a summary process action to federal court). For these reasons, I recommend that Wells Fargo be ordered to pay Downing's costs and expenses, including actual attorney's fees.

With respect to his actual attorney's fees, Downing seeks attorney's fees of $4,098, reflecting seven hours of work by a senior attorney at an hourly rate of $425; plus one-and-a-half hours spent at a discounted rate of $125 for scanning, filing, and serving the motion to remand; and, twelve hours of work by a lesser-experienced attorney at the hourly rate of $156.[12] See Docket #13. Downing has not sought reimbursement for any costs. Wells Fargo did not object to the amount of the fees asserted by Downing's attorneys.

In assessing the reasonableness of the attorney's fees submitted, I consider (1) whether the hours spent on the motion to remove are reasonable; and, (2) whether the hourly rates are reasonable. As for the first question, the answer is yes, the time spent by Downing's counsel is

---

[12]  Accompanying the Attorney's Fees Affidavit is a fee scale compiled by the Massachusetts Law Reform Institute (MLRI), a legal services advocacy and support center for low-income persons and their advocates. See Docket #14.

reasonable. Downing's memorandum of law was a succinct five pages, and his attorneys have submitted time records reflecting 20.5 hours of their time. This Court has spent more time considering this issue. With regard to the hourly rate of Downing's senior counsel who has thirty years experience, there is an accompanying affidavit of Georgia Katsoluomitis setting forth a rate of $425 for attorneys with similar experience. See Docket #14. There is some support from other cases in this district for attorneys with similar work experience to receive fees above $300 per hour, but not $400 per hour.[13] However, in this matter, more than half of the hours worked on this matter were billed at a much lesser rate of $156 per hour; the hours spent on this issue were modest; and where the senior attorney billed for only seven hours of her time, I find Downing's request for $4,098.00 for costs and fees to be reasonable.

---

[13] See, e.g., Fryer v. ASAP Fire and Safety Corp., 750 F. Supp. 331, 338-40 (D. Mass. 2010) (Bowler, M.J.) (awarding requested hourly fees of $325 to lead trial counsel with 43 years experience); Mills v. Cabral, 2010 WL 2553889 *3 (D. Mass. 2010) (awarding $350 per hour for core tasks); Iverson v. Braintree Prop. Assocs., L.P., 2008 WL 552652 at ** 2-3 (D. Mass. 2008) (awarding $325 per hour to lead attorneys). But see Rosie D. v. Patrick, 593 F. Supp. 2d 325, 331 (D. Mass. 2009) (awarding $425 and $375 per hour).

**CONCLUSION**

For the reasons stated above, I RECOMMEND that the Motion to Remand (Docket #11) be GRANTED and the Motion for Attorney's Fees (Docket #13) be GRANTED.[14]

                                                */s/David H. Hennessy*
                                                David H. Hennessy
                                                United States Magistrate Judge

---

[14] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).